So for the for the appellant we have is that Melinda? Yeah. Melinda Cantrell. My eyes are getting a little... Cantrell I think. Yeah. So please go ahead and introduce yourself and then we can start. We've got 20 minutes set for our unit and we generally want to aim for that time but because this is the only case set for today I'm sure I'll be a softy if you or Mr. Felton need an extra minute or two. Thank you Judge Gold. Good afternoon. May I please support Melinda Cantrell and Tom Hurl on behalf of the defendants, appellants and cross appellees, Deputy Conley and Deputy Peterson and cross appellees the County of Los Angeles. I My plan today is to initially address the issue on remand from the United States Supreme Court regarding whether the plaintiff's shooting injuries were proximately caused by the deputy's failure to secure a warrant at the outset. Could you speak a little more into the mic? I'm having a hard time hearing you. Yes your honor. I will next address after that the negligence cause of action. The Supreme Court cautioned that the foreseeable risks associated with the deputy's failure to knock and announce should not be considered in analyzing whether the plaintiff's shooting injuries were proximately caused by the deputy's failure to secure a warrant at the outset. Does that mean we completely ignore the failure to knock and announce or that we don't consider it as a separate constitutional injury? I'm sorry I didn't hear. Does that mean we completely ignore the way in which the entry occurred or that we just don't consider it as a separate constitutional injury? What way to liability? I would submit that the knock and announce cannot be part of any liability analysis. But it could be part of causation. For example, if they've gotten a warrant, it is perfectly possible that they wouldn't have barged in at the speed that they barged in because they would have taken some time to go get a warrant and so the fact that they went in the way they went in and the speed they went in seems pertinent, no? No, Your Honor. Respectfully, the surprise entry or startling entry by a police officer is a foreseeable risk solely associated with the failure to comply. Why? Because, Your Relevant wrongful conduct. Because the deputies are entitled to qualified immunity, the Supreme Court directed that this court must look to only whether the deputies' failure to secure a warrant at the outset approximately caused the injuries. And in fact, the Supreme Court specifically stated that the risk of associated with the deputies' failure to knock and announce, and those comments by the Supreme Court should be given great weight. The Supreme Court's failure to knock and announce could not serve as the basis for liability, but it doesn't say that it couldn't be part of the causation stream. Your Honor, as I understand the Supreme Court's directive, they would like this court to analyze the foreseeable risks associated with only the warrantless entry, and the Supreme Court said that the relevant conduct for which the defendants could be liable is the warrantless entry, and that's why this court should look to whether the deputies' failure to secure a warrant at the outset approximately caused the plaintiff's shooting injuries. Could I interject a question, please? Of course. The Supreme Court, of course, said that we shouldn't look at causation from the knock and announce because we said that was not clearly established federal law, but I thought it said that we should look at whether the unlawful entry was the proximate cause of the injury, and that's a little different in my mind from saying whether the failure to get a warrant is the proximate cause, because I guess I'd like to know why isn't the entry that's unlawful a proximate cause of the injury? If they had not entered, there'd be no shooting. Your Honor, the Supreme Court specifically did state in the last sentence of the opinion that on the issue of whether proximate cause permits respondents to recover damages for their shooting injuries based upon the deputies' failure to secure a warrant at the outset because that is the relevant conduct at issue. But they didn't only fail to secure a warrant, they also didn't have exigent circumstances and they didn't have a, I mean, in other words, there were a number of reasons why that entry was invalid, of which the failure to get a warrant was one, but ultimately you had an unprivileged entry, an entry that was violated the party's rights to be secure in their home without a viable exception to the security secured by the Fourth Amendment. So why are we looking only at not getting the warrant as opposed to the entry, which was warrantless, it was also without an exigency, it was also without an emergency, it was also without a, whatever the care exception is, and so on. It was a number of things, all of which we said to begin with. Because, Your Honor, the Supreme Court emphasized that there must be some direct relation between the injuries asserted and the injurious or wrongful conduct alleged, and here... But the wrongful conduct was going in to the house without a justification. Well, Your Honor, the deputies' entry into the shed, in and of itself, and whether that led to the planned shooting injuries, goes only toward but-for causation. In a Section 1983 claim, a plaintiff must satisfy but-for and proximate causation in order to recover for their injuries. Okay. What would commonly cause an elevation to, from proximate, or from but-for to proximate? The elevation would be whether the risks at issue were within the scope or were foreseeable from the relevant wrongful conduct, which here is the warrantless entry, and has been... But that's what I'm asking you. Why is it a warrantless entry, as opposed to an entry without justification under the Fourth Amendment? Because there are a number of other arguments that were made. We said it was an exigency, it was an emergency, it was one of the district court data. In other words, it was an invalid entry for a large number of reasons, of which the failure to get a warrant was one. Your Honor, because the Supreme Court directed that proximate causation must be looked at based upon the facts of this case. I'm looking at the facts of this case. In this case, Mr. Mendez did not aim the BB gun rifle at the door because he believed that police officers were entering without a warrant. In this case, however, the fact that he aimed the rifle at the door was the deputy's... I don't think he aimed it anywhere. I thought he just picked it up. Well, the district court found that the gun was necessarily pointed at the officers, which led... But he didn't aim it. Your Honor, I would respectfully submit that the fact that the gun was aimed is what led to the deputy's use of force, regardless... The fact that the gun was there was what led to the use of force, and the question is whether it was foreseeable that it would be there, and that somebody who was living there might be holding it. But, Your Honor, on Hudson v. Michigan, the court addressed the scope of the risks of a warrantless entry versus a knock-and-announce violation, and said those requirements protect very different interests. The purpose of the knock-and-announce requirement is to protect human life and limb from an unannounced entry. Before I ask you something, do we know that he wouldn't have gotten a warrant? Your Honor, I would respectfully submit that whether the officers had probable cause or would have obtained a warrant goes only to but-for causation, and the fact that there was probable cause, as found by the district court at ER 52, shows that there cannot be but-for causation satisfied. Regardless, even if there's not probable cause for the entry, the plaintiff must show that the wrongful conduct, which here is the failure to obtain the warrant, approximately caused the shooting injury. And why is the wrongful conduct the failure to obtain a warrant, as opposed to the entry? The entry, they could have not had a warrant if the entry was by consent. Again, not had a warrant if the entry was justified by exigent circumstances. Just, I mean, maybe I'm missing something, but it seems to me it's the entry that needs to be the proximate cause. Your Honor, I'm sorry. Respectfully, we have to look at the and if that led to the plaintiff's shooting injury. Was it also unlawful because there was no consent, there was no exigency, there was no emergency, and so on? But those factors did not cause the gun to be aimed at the door. It was the surprise or startling entry which caused Mr. Mendez to sit up, at which time his gun was aimed toward the door, which, for which the defendant... But if, for example, they had for consent, then they presumably would have said who they were quite aside from a not going to announce it requirement. They would have had to say, you know, we're here, are you going to let us in? And that would have, and they didn't do that so they don't have consent, so that's another thing they don't have. Again, Your Honor, that only goes toward but for causation. Why? Because the Supreme Court said for proximate causation, we have to look at the reason why the conduct was unlawful. The reason why... It wasn't unlawful to tell him to get consent also? Well, the reason why the conduct was unlawful, as stated by the Supreme Court, was the failure to secure the warrant at the outset. If the knock and announce, and whether the deputies comply with a knock and announce requirement, is what the plaintiffs state is the reason why the startling entry is the reason why this and again, the knock and announce... It isn't part of the point of a warrant to have everybody slow down and think about whether they really have a basis for going in there and go have a, as Judge Kuczynski said in his concurrence in her opinion a while ago, have a clear-headed person look at the question of whether there was in fact probable cause and if all that had happened, we have no basis for thinking that the same kind of rush to judgment as happened here to go barging into a shed which they was found that they knew or should have known somebody was living in and which they had at best questionable probable cause to believe that anybody dangerous was in there, might have all been slowed down and might not have happened and that's not a purpose of a warrant to get everybody to get cool-headed essentially? Respectfully, Your Honor, again, that is conflating the interest protected... Why is it conflating? I don't understand that. Because the interest protected... You keep saying that, but why? Because a warrant protects a citizen's privacy entrance as a right to shield evidence and its purpose and paper and effects from unwarranted... How does a warrant do that? Well, it does require that a warrant with probable cause... So you're not going barging in because you have to go and ask somebody else first and so it's going to take a little bit of time and that you get a third person to look at it instead of simply going in on the spur of the moment. So how can you say that it's... You have to look at what a warrant is to know what it's protecting against. Because the manner of interest and the failure to comply with the not-going-to-announce requirement is an interest as stated by the Supreme Court associated solely with the not-going-to-announce requirement. If you don't not-go-to-announce, if you get a warrant, these other things occur, i.e., you slow down, you ask somebody else, you have to put together your own explanation of why you're going in there, and it is perfectly possible that you therefore will not, in fact, go in or won't go in in a big hurry or will take more measured time to figure out what you're doing, such as remembering that people live there. Well, respectfully, if the deputies had a warrant in their back pocket, the same outcome would have occurred if they... Yes, but first they had to get it. Yes, Your Honor, but proximate causation is necessary to cut off the endless chain of causes in fact that stem from but-for causation, and that's why we need to look at the foreseeable risks in relation to the specific... I'm asking why, given what a warrant is, which is a requirement that you not go in on the spur of the moment, but instead, unless there's a good reason to go in on the spur of the moment, which there wasn't here, and you go and you essentially slow down, you articulate your reason, you articulate it to somebody else, and you get a piece of paper or an authorization, that's what a warrant is, all right, functionally. The purpose of it is to protect privacy, ultimately, but what it is, is it happens to protect privacy by slowing everybody down and making sure that there actually is a reason to be doing this. Yes, Your Honor, but the incident did not occur because the deputies did not have a warrant. The reason the incident occurred is because Mr. Mendez aimed or intentionally or unintentionally directed the gun towards the door, and the reason that happened is because of the startling or unannounced entry. Again, we are to look at whether proximate causation can be satisfied based on the facts of this case. But how can you back out the question of whether they would have gotten a warrant and whether they would have behaved in the same way had they gotten a warrant? Because, again, Your Honor, I think that goes only to but-for causation. I don't know if you can say that, but why? Because if there was probable cause for the arrest… If there was, which you say there might not have been. I submit there was, but if there was probable… Or at least it isn't so obvious that there was, that they would have gotten a warrant. Well, if there was probable cause for the arrest, then the entry could not have been a proximate cause of the legal injuries because whether the warrant was obtained or not, the same outcome would have occurred. If there had not been compliance with the not-to-be-announced requirement, but the deputies had a warrant… The district court opinion seems to say two different things about probable cause. And our opinion says we're sort of dubious, but we're going to assume it. Why was there probable cause? Your Honor, there was probable cause to believe that Mr. O'Dell was in the shed, as found by the district court, because an officer spotted, going through the factories, an officer spotted Mr. O'Dell nearby at a grocery store. And then he was seen in front of the huge… He was riding a bike in front of the house. Yes, Your Honor. When you ride a bike in front of a house, you're not… It doesn't say he's going to the house. It doesn't say he stopped at the house. Nobody says the bike they saw at the house was the bike that they saw anybody riding. What makes you… What is there about riding the bike in front of a house for you to think that somebody's following in the house? Because Deputy Riesland testified that the confidential informant advised that a male-matching Mr. O'Dell's prescription was seen at the residence, and she did not… She was not told that he had left the residence, and she did not tell that anyone… Anything more than that? Yes. Sergeant Minster said the informant had seen O'Dell at the door and was riding a bicycle, and that he was at the Hughes residence at a bike, on a bike. And my information from the testimony is, my understanding is that, not that he was just riding by, but that he was actually at the Hughes residence. And then… Well, the district court found that because the information wasn't specific as to… And then the bicycle was found on the property. As to whether Mr. O'Dell was in the main house or the shed, there was probable cause to believe he was anywhere on that property, on that Hughes property. So that's why probable cause would also be shown. But again… Didn't the police also think that Mr. O'Dell was down the street because they sent officers to another house on the street, didn't they? Your Honor, the information was that Mr. O'Dell was connected with both of these properties. Why would there be any… How do you get probable cause out of that? For the Hughes residence? Right. If it's as likely that he's down the street as it is that he's at the Hughes residence, how does that establish probable cause? Well, because I think there's a probable cause for the Hughes residence. The Larson residence, there was consent for the search there. So the officers went and obtained consent for that one. For the Hughes residence, for the reasons I stated, there's the Minster testimony, the Ramirez testimony, and the Rissling testimony. And that finding that there was probable cause to believe he was in the shed was not clearly erroneous by the district court. In addition, regardless of whether there was probable cause, again, that only goes toward cause in fact of the plaintiff's injury. We have to look at, as the Supreme Court repeatedly stated, whether the warrantless entry was a proximate cause of the plaintiff's shooting injuries, which defendants submit in this case it cannot be because the purpose of a warrant is not to prevent a surprise or startling entry. No, I think the Supreme Court said in Grubbs that it is designed, that it is the warrant is designed to interpose the deliberate, impartial judgment of a judicial officer between the citizen and the police. Your Honor, in United States v. Grubbs and Breaux v. Ramirez, the Supreme Court said that the Fourth Amendment does not require the officer to present the warrant to Is that a California law requirement? She's arguing that. I'm sorry. Does California law require that a warrant, if there is a warrant, it has to say whether it has to be served with notice or not notice? Your Honor, I was only focusing on the Fourth Amendment. Well, I know, but I want to know what California law is. I would have to check on that because that hasn't been asserted. I'm looking at the statement of probable cause in the warrant that was eventually gotten, and this is what it says, that the deputies went to the location searching for a wanted parolee at large. The parolee is named Ronald Dale. He was believed to frequent this address multiple times. He had seen by deputies echo within the past hour within blocks of the residence.  Is that the reason you're thinking that? Is that probable cause? Well, I think that the officers had probable cause to believe Ronald Dale. Well, I'm reading what they said when they got their act together and wrote a statement of probable cause. I would submit there is probable cause, but for the issues before this court, again, that's but-for causation, not proximate causation of this deputy's failure to secure a warrant. Proximate causation to be satisfied has to show that the foreseeable risks or the reason the conduct was unlawful bears a direct relation to the point of injury. Well, the reason it's unlawful, if they had given this to a magistrate judge at the outset, wouldn't it have been pretty likely that he would have said, excuse me, but why does it give you probable cause to go into the house or much less to the shed behind the house? The fact that he was seen there within the past hour, within blocks of the residence? Again, Your Honor, whether the whole incident could have been avoided completely had the deputies never entered the home, entered the shed, goes only toward but-for causation and whether the deputy's failure to secure a warrant was a but-for cause of the shooting injuries. Why isn't it foreseeable that when a police officer enters a home without a warrant, there may be a violent confrontation with the resident? Why isn't that perfectly, I mean, you almost think the odds are greater that there's going to be a confrontation than not. Because, Your Honor, with regard to whether there's a purpose of the warrant is to prevent a violent confrontation. Again, under Groh and Grubbs in the Fourth Amendment, the officer's not even required to present the search warrant before entering, so the same outcome would have occurred had they had the search warrant. The reason Mr. Mendez was not violently confronting the deputies is because they lacked a search warrant. There's no direct proximate causal relation between the conduct alleged and the plaintiff's injuries. In addition, undoubtedly, regardless of whether a deputy had a warrant, a resident cannot physically attack or threaten an officer based on the fact of lawfulness for the failure to have a warrant in and of itself. That's under a number of the cases we cited, and Penal Code Section 834 similarly says that for an arrest, society has an interest in the residents or citizens complying when confronted with a police officer to obey orders, and they can't just shoot a police officer because the officer reasonably or unreasonably enters without a warrant. But this person wasn't doing that, you say, was he? Yes, Your Honor, and that arguable reason of the warrant requirement has no relation to the facts of this case. In a world in which we believe that the Second Amendment protects the right of people to have guns in their house, and not only that but to draw them on intruders when they don't know who they are, it seems pretty foreseeable that there may well be a gun in this house and that the person in it may be holding it. Well, Your Honor, without doing anything wrong, and everybody agrees that Mr. Mendez didn't do anything wrong. But the reason that this incident occurred is because Mr. Mendez was startled or surprised by the entry, which has nothing to do with the fact of whether the deputies had or had not a warrant. Hudson v. Michigan specifically says that the knock-and-announce requirement is meant to protect wife and limb. And the warrant has nothing to do with it? I'm sorry? And it says the warrant has nothing to do with it? Correct. So Hudson says that? I know it says the first. Does it say the second? No, well, Your Honor, United States v. Smith is a Sixth Circuit case that I quoted which specifically says that the warrant has nothing to do with protecting those interests because the purposes are different. And while the knock-and-announce claim is meant to prevent against violence provoked by an unannounced entry, that claim is that that foreseeable risk is not related to the privacy interests under the warrant requirement. And again... See if you can explain to me. I understand that ultimately the warrant requirement is to protect privacy interests from undue intrusions. But again, how does it do that? What is the warrant requirement? Well, again, Your Honor, the warrant requirement and the requirement that there be probable cause, approval by the magistrate, and limited in scope, the failure... It takes some time. It's not instantaneous. Again, the time factor only goes to but for causation. And those risks have nothing to do with the fact that the... Mr. Mendez aimed the... Again, when I say aimed, I mean intentionally or unintentionally. The district court found that from the deputy's perspective it was necessarily pointed directly at them. The reason this whole incident occurred is because, as argued by the plaintiffs for the knock-and-announce violation, the Supreme Court said several times in the opinion that we are not to conflate the risks from those two separate violations in considering proximate causation and whether the plaintiff's shooting injuries were caused by the failure to secure a warrant. I think we can all agree that we're to analyze each claimed violation of the Constitution separately. I don't think there's any doubt about that. But to say, then, that we're going to... I don't know what it means, then, to say that we're going to consider the totality of the circumstances in assessing whether the constitutional violation occurred or not. Your Honor... Especially if you excise, if you totally ignore the fact that they didn't identify themselves as the police. They had cautions that could have been given to the victim, Mr. Mendez, had they bothered to call into the chat before they entered. Those are maybe related to the possible claim of knock-and-announce. We realize that that is not at issue because it didn't violate the established law. That doesn't mean it's not relevant. That doesn't mean that it's not important, actually, to deciding the outcome of this case. Your Honor, the directive from the Supreme Court, we're not considering the totality of the circumstances. We're considering proximate cause from the warrantless entry. It's, I think, very important to stress that the Supreme Court itself specifically stated that risks associated with a surprise entry or the fact that the deputies barged into the shed appear to be solely associated with the violation of the knock-and-announce requirement and not the warrantless entry. Isn't that why it's back here? They say it appears to be this, but they're not making that finding. They're sending it back to us to make the finding that they want made, right? Certainly, Your Honor, but I think their comments are entitled to great weight, as well as the directive, to not conflate the foreseeable risks associated with the two claims and to further find whether proximate causation can be shown based on the fact of this specific case wherein Mr. Mendez did not, where the weapon wasn't pointed at the door because the deputies were entering without a warrant on their person. The district judge opined that it was pointed in the direction of the door because Mr. Mendez had just been awoke, awoken, I don't know, awoke, and he sat up. He hadn't even got on his feet at the time that they, I saw that there was a gun that appeared to be across his lap and then they pounded 15 rounds into the two people sitting there. Yes, Your Honor, and that, had the deputies not been announced, then arguably Mr. Mendez, that whole incident may have been avoided, but the fact that they had the warrant or not had no bearing or causal relation to the fact that he was moving that gun when he sat up. If the deputies were armed with the warrant and entered in the same manner, the same outcome would have occurred. We don't know that at all. The officers from outside the shack could have been calling in, police, raise your hands, let me see your hands, get on your stomachs, whatever the direction might have been. That would certainly have been an appropriate way of handling it. Respectfully, Your Honor, all those different scenarios are going to, but for causation, for proximate causation, we have to look at whether the foreseeable risk of the warrantless entry in of itself proximately causes shooting injuries versus the foreseeable risks associated with the failure to knock and announce. It's the surprise, the warrant is not meant to prevent violence from a surprise entry because somebody inside the house mistakenly believes an intruder is entering. That is not the purpose of the warrant requirement. And the knock and announce... What do you think the purpose is? The purpose of the warrant requirement is to protect the privacy interests of the citizen and their right to shield evidence, potential evidence in their house, papers, persons, and their facts. Their dignity and living area. Yes, Your Honor. Absolutely. I don't see why that isn't... The danger exists to impair those rights by permitting somebody to go in when it's... And it's obviously an unlawful entry. But, Your Honor, it's not foreseeable that a violation of that requirement will result in violence. Okay, well... ...result in somebody doing something that he would do in his own house, which was an invasion of his privacy. In other words, he was in his house doing what he does in his house and these people came in and invaded his privacy to pick up his gun if he felt like it. Why isn't that directly within the scope of the warrant, even under your theory? Because the reason the incident occurred, the lack of a warrant did not result in violence. Again, if the officers had a warrant and entered in the same manner, the exact same incident would have occurred. Of course they would have had to get the warrant. Let's go back again. I mean, you're assuming they would have gotten the warrant. You're assuming that having gotten the warrant and taking the time to get the warrant, they still would have done the same thing rather than coming in in a little more graceful manner and, in particular, remembering... I mean, at least one of them says that he knew that there was somebody living back there, but the other one says he didn't. Maybe they could have talked to each other and remembered there was somebody living there. The fact is that by operating at the speed they did without getting an outside person to look at what they were doing and taking the time to do that, they ended up creating a mess, essentially. But whether they had probable cause only goes toward but-for causation. Because the officers did have probable cause... What protects the privacy of the person? You keep saying this is about privacy. Well, what is the protection of privacy? First, you can't go in without probable cause. Then why isn't that relevant to the privacy? Because we're discussing causation of the shooting injuries, not whether there was a violation of... If a shooting violation was going into somebody's house when he was doing something he perfectly had a right to do, i.e. pick up a gun. But that's not foreseeable that that will result in violence from... No, Your Honour, respectfully, it is not because a resident mistakenly aiming a weapon at an intruder is protected by the... I'm not going to announce. A resident intentionally aiming a weapon at the warrant is culpable... He did what he would ordinarily do in his own house, pick up a gun. But, Your Honour, we're looking at the deputy's viewpoint. But, yes, again, on the facts of this case, the plaintiff didn't intentionally pick up a gun, so that shouldn't be considered because there's no causal relation with respect to whether preventing violent confrontations is a risk of a warrantless entry. That's not... I would submit that it isn't. But even if it was, that's not what happened here. And the Supreme Court wanted the court to consider, on the facts of this case, if there was proximate causation shown and a direct relation between the injury asserted and the injurious or wrongful conduct alleged, the relevant conduct here, which is the deputy's failure to secure a warrant at the outset. So for those reasons, the Mr. Mendez Act, unintentional or intentional, of aiming the weapon at the door is not proximately caused by the warrantless entry. Alternatively, it would be a superseding cause of the injury as well. Okay, counsel. I'm afraid you're quite over your time, but it's been, with your excellent argument, in response to my colleague's questions. So that was the correct thing to do. However, we do have to, at some point, resolve the argument. Shall I? I'm sorry. Well, I was going to say I would like to give you a few minutes for rebuttal, even though you're outside your time limits now, and so that you could prepare. I'd say we'll add four minutes to your time for rebuttal argument. Thank you, Your Honor. We could hear from Mr. Feldman. Good afternoon, Your Honors. May it please the Court, my name is Leonard Feldman, and I'm counsel for the Mendezes. It's difficult, as I'm sure you can imagine, listening to somebody talk about the Mendezes aiming a gun at the officers and the societal interest in ensuring that people don't attack police. At trial, of course, the district court did not find any of those arguments persuasive, and the district court found, just as defense counsel had conceded, that the Mendezes did nothing wrong. The societal interest here is quite clear, which is ensuring that police officers don't go barging into people's homes when they don't have a warrant. But the problem is that the Supreme Court thought when we said that we were mixing up the two issues of the nature of the search, they kept saying warrantless search, but let's say the nature of the search or the entry and the knock and announce. I don't know why they thought that, but that's what they thought. So what do we do with that? Well, the answer is either A, the Court can revisit its qualified immunity ruling on the knock and announce, and we think there's revisit its qualified immunity ruling on the knock and announce because we think there's very solid case law, particularly the cases that we've cited and the testimony that we've cited that would justify that. But what the Supreme Court was really concerned about was a matter of semantics. The Supreme Court was concerned about words like startling and unannounced. And Judge Berzon, as you pointed out, those are not just descriptions of what happens when you don't comply with the knock and announce rule or the knock notice rule, which is the California analog, which is still relevant here. It's also a description of what happened. And so if you look, for example, at the defendant's March 1st letter at page 3 and the Ankeny case, the Ninth Circuit's decision in Ankeny, what we know is that the manner of the entry, it's not just that they went in without a warrant. It's how they went in without a warrant. And Ankeny makes clear that the manner of entry is part of the Fourth Amendment analysis. And we're not talking about knocking and notice. We're talking about the many, many, many different ways that you can ensure that the people within that windowless shack knew that you were police. One is simply to say we're police. The other is to say come out with your hands up. I mean, there are so many ways to make sure. Isn't the problem is that if you narrowly focus on the warrant as opposed to the unprivileged entry, you end up with the question of, well, couldn't they have done exactly the same thing with the warrant? Apparently, in the modern world, you do not have to give notice that you have a warrant. You don't have to say, look, here's the warrant. If somebody asks for the warrant, it's not even clear that you have to tell them whether you have the warrant. I was asking what Californian law is with regard to whether the warrant has to authorize a no-knock search. Do you know the answer to that? I'm not entirely sure, but I think to get a no-knock warrant, you need to show things that are different than you need to get a warrant. So the warrant requirement as a factual matter, although not as a Fourth Amendment matter, might have precluded this, in fact. Yes, and of course they have the no-knock. I don't know if that's relevant to the Fourth Amendment analysis. It is, because there are a multitude of ways that the police could have ensured that the occupants knew that they were police. But what's up with the warrant requirement? In other words, first of all, are we focused on the warrant only? Or are we focused on the whole question of the fact that they made an entry without a justification for doing it? In other words, it was unreasonable unless X, Y, and Z, and they didn't have X, Y, and Z. Again, the Ankeny case is quite clear that we look at Ankeny. It's one of the cases that defendants cited in their March 1st letter, and we cited it in our March 15th letter. And it's a case where the Ninth Circuit makes clear that within the contours of the Fourth Amendment analysis is not just the entry, it's the manner of entry. And frankly, when you look at the Supreme Court's decision, I think this is what they meant when they talked about the predicate conduct. But let's take a look, because I think this is important, at the probable cause issue, because counsel keeps saying that the same thing would have happened if they had a warrant in their pocket. The probable cause argument and the warrant in their pocket argument is an argument that the defense made in the Supreme Court because they had a district court decision that found probable cause, and the Ninth Circuit had not reversed that decision. The probable cause issue is actually exceedingly clear, because what happened is the defendants filed a motion to amend the district court's findings, and the district court responded to that by saying, the deputies here lacked any credible evidence that O'Dell was in the shack. This court quoted the district court's finding that the deputies here lacked any credible evidence that O'Dell was in the shack. So the notion that these officers could have gotten a warrant, absolutely impossible, because they had no evidence that O'Dell was in the shack. And if we look at the evidence that... Actually, when they did finally go get a warrant, as I was reading before, the evidence that they gave seemed not to set up probable cause for him being in the shack. No. Or in the house. Maybe the house. Not even the house. I agree. Nearby an hour or so ago or something. Yeah, I mean, the argument is that O'Dell had some relationship to Paula Hughes' home, so we searched the separate residence in her backyard. But there was... I mean, then we have a whole procedural morass, because I gather you did not challenge that in the Supreme Court. The probable cause? You didn't challenge it before us, did you? Yes, we did. It was part of the cross-appeal, and that's the problem, is that it was part of a cross-appeal that the court didn't reach. So now we're in a situation where clearly this is within the contours of the arguments, and the court does need to reach it, because it's necessary in order to reject this argument that these deputies could have had a warrant in their back pocket. The other reasons why the warrant in the back pocket argument doesn't work is that there's a particularity requirement in the warrant clause. I mean, in order to have a warrant in your back pocket, you had to go tell the magistrate judge what it is that you want and who it is that you're searching. And these officers who were told, and the district court found that they heard that the Mendezes lived in the backyard, nevertheless ignored that and went into the Mendezes' home with their guns out. If they had a warrant in their back pocket, clearly they would have known that they were invading somebody's house. They also would have needed to take some time. Judge Berzon, you pointed that out. That would have given the Mendezes sufficient time to ensure or to learn that there's a large police presence outside of their home. And it is, I think, counterintuitive to think that a police officer who has a warrant in her back pocket doesn't mention that to the occupants of the home before the search. And this isn't about whether there's a constitutional requirement to announce that you have a warrant. That issue is actually unclear in the Ninth Circuit, but we certainly don't have to address it here because officers, when they invade somebody's house and they have a warrant, they let those folks know that they have a warrant. So if we look at the question that the Supreme Court posited, which is whether the unlawful entry, the predicate conduct, of course, being the trespass,  whether that approximately caused the Mendezes' harm, clearly it did. And the difference between but-for causation and proximate causation turns on these notions of remoteness, foreseeability, and directness. And the record here shows, as I think the district court found, that the officer's unlawful conduct led directly, it led immediately, and it led foreseeably to the shooting injuries. Everybody recognizes that one of the risks of a warrantless entry is that somebody's inside, and they're carrying a BB gun that they want to give to their son for his birthday, and they're entitled to do that. Or they've got a kitchen knife because they're cooking dinner. When police go into a house without ensuring that the occupants know that the person coming in is a police officer, one of the risks is an injury. And if the court is concerned about what the purpose of the warrant clause is, what I would suggest is this court in 2001 in the case versus Kitsap County Sheriff's Department decision specifically said, and I'm going to quote, this court recognized that the absence of a warrant creates a greater potential for violence and that the purpose of the warrant clause, like that of the knock-and-announce rule, is to head off breaches of the peace. Hudson doesn't say that the warrant clause doesn't protect breaches of the peace. It just talks about the knock-and-notice rule. The warrant clause, no less than the knock-and-announce rule, protects against these kinds of injuries. Justice Jackson said that at McDonald's. Numerous courts have said the same thing. People have the right to do in their homes what they will, and the Mendezes here were doing nothing other than taking a nap in the middle of the day. And had it not been for the unlawful entry and the manner of that entry, the predicate conduct, these shooting injuries would never have occurred. And that, Your Honor, is as simple as the unlawful entry claim can be. Clearly, the Supreme Court wanted this court to excise words like startling, and that's not a difficult thing to do. I would submit that that's a description of the manner of the entry, and it's appropriate nonetheless, but, you know, we are where we are. Counsel, it's just cool if I could interject for a moment. In your argument, you're stressing that we should look, among other things, at whether the unlawful entry was the proximate cause of the injury, whereas your friend on the side of the county of L.A. is arguing that we should look at whether the failure to get a search warrant was the proximate cause. So in terms of what the Supreme Court asked us to do, did they give any clues which of those formulations is correct? I think the Supreme Court did. It talked about the injurious conduct. It talked about the predicate conduct. The failure to obtain a search warrant is not active. It is the failure to do something. So when we start talking about whether that inaction or that failure proximately caused something, it's somewhat of an attenuated conversation. But I would also say that if you focus on the failure to obtain a search warrant, it goes back to many of the issues that Judge Berzon mentioned, which is by failing to get a search warrant, they failed to slow things down, they failed to comply with the particularity requirement, they failed to do a number of things that obtaining a search warrant would have allowed them to do, including ensuring, as they had been told, that the people lived in this house. I mean, this is a separate Fourth Amendment protected structure. We've also pointed out, and I do want to spend a little bit of time on the negligence claim. Obviously, one of our concerns is that the defendants here will again file a cert petition. And one way to head that off, and we think an important way to head that off, is to address the California negligence claim. Can I ask a question? Yes, Your Honor. Is there any chance of settling this case? I.e., is there any reason we should ask our... or you would be willing to talk to our mediators and see if the case could be settled? We did that. When? We set this to mediation previously, right? Yes. After the case came back from the U.S. Supreme Court, the two parties jointly approached the court and asked for a referral to the mediation program, and it was unsuccessful. So, it's hard to answer that question without divulging what happened in the mediation. It's hard to answer that question without divulging what happened in the mediation. This is a case that has been vigorously litigated, and frankly, I think part of the reason is because these two individuals who were shot are not living in a traditional home, and I think the police feel that they can do things with those folks that they would not otherwise do, and it's unfortunate, but again, we are where we are. This court also asked for a briefing on the California negligence claim. The principal response to that from the defendants is that it's normally a jury issue, and that's true. If we didn't already have findings, this is something that would have to be remanded to the jury or to the trier of fact, but we do have those findings, and we have three separate sets of findings that we submit are entirely dispositive on the negligence claim. First, this court, as well as the district court, found liability under the provocation doctrine, and the California Supreme Court specifically held in haze that its negligence claim is broader than this court's provocation doctrine, and second, we have findings from the district court that the conduct here rose above gross negligence. We have a finding that the conduct was reckless, and we have this court affirming that the conduct was either reckless or intentional as to the Mendez's rights, and then lastly, of course, we have a multitude of Fourth Amendment violations, and this court has also held that Fourth Amendment violations are sufficient to show a breach of duty under California law. The district court, of course, did not agree with this claim. It identified, first and foremost, the failure of the Mendez's lawyer to file a motion rather than a request. We addressed that in our briefing. The Mendez's filed a request because the district court had indicated that it would address this issue on its own motion. The district court also ruled that it didn't read haze as providing an analog to the provocation doctrine, as we've explained in our briefing. That is precisely what haze does, and in fact, haze makes clear that its negligence doctrine is broader than provocation, and as we've also explained in our brief, states have a sovereign right to adopt broader protections and have done so here. And lastly, the defendants have claimed that the district court didn't find negligence. That is not an accurate or correct reading of the district court's opinion. What the district court said is that it does not view the overall conduct of defendants as negligent, and then it added, apart from the unconstitutional search and their unjustified failure to realize that the Mendez's home was not another storage shed. So what the district court said is it wasn't finding negligence except where it had already found gross negligence, recklessness, unreasonable conduct, and unconstitutional conduct. And that, Your Honors, is precisely the sort of pre-shooting conduct that the California Supreme Court in Hays indicated could give rise to liability under state law. The other thing to keep in mind with regard to the state law claim is that regardless of how this court approaches the knock-and-announce claim, like I said, we've suggested that maybe the court revisit the knock-and-announce qualified immunity ruling. Whether the court does that or not, it is crystal clear under state law for purposes of the negligence claim that the officers here were required to knock and notice before entering the Mendez's home. The other two claims, there's the excessive force claim. The only thing I would say about the excessive force claim is that when this court was addressing it, it specifically cited Espinoza as part of its ruling, I think, on the qualified immunity issue as to the excessive force claim. I do think it's important to look at Espinoza because there are two sections of Espinoza. There's a Roman numeral III that relates to the provocation doctrine and a Roman numeral II that relates to the excessive force claim. The court there, and it's one of Judge Berzon's opinions, addressed those issues separately. And what the Ninth Circuit did in Espinoza was adopt a totality-of-the-circumstances test that looks at pre-shooting conduct. And then lastly, we again have the knock-and-announce claim. In the end, Your Honors... Counsel, let me ask you a question. I'll also give Judge Berzon a moment to relax. But the question I have is a procedural question. On your request that we reach and decide the California law state claim, is there any procedural barrier to that based on the fact that the district court was unwilling to take up the Hayes case again after it was changed, after its rule was changed because it said your client didn't file a motion? Yes. Is there any procedural issue raised by that for us reaching that? There is a procedural issue that this court would necessarily have to address. And the procedural issue is where a district court says to the parties, when Hayes comes out, I will look at that decision on my own motion. Is there somehow a procedural bar when the parties do nothing more than notify the district court that Hayes has in fact been decided? The district court's reference to or requirement that the Mendez's file a motion ignores the fact that the district court had said it would resolve that issue on its own motion. And that clearly is not a proper basis to say to litigants, you have a right to recovery under Hayes, but you didn't put the right words on your submission and so I'm not going to address it. I think that is clearly an abuse of discretion. Okay, now let me just say thank you for answering my question. Now, I don't want to take Judge Brezan off any likely line of questions. She has, because you were mentioning one of her opinions, I'll add three minutes to your time. I guess my, insofar as you're arguing for a broader scope under Graham as opposed to under Hayes. Stacey, add three minutes. My understanding is that's what you're saying, right? There are four ways to decide this case. Knock and announce. Hayes. We can't decide under knock and announce. Oh, you mean go back to that? Go back. Hayes. Excessive force. I suspect we have major procedural problems undoing what was done. Well, there are exceptions to law of the case, including... But also, I mean, we had a reason for the decision in the first place and you really haven't re-briefed that. So I don't know... We did re-brief it and I think that the case law... So what happened, Your Honor, is when this court recognized that the Mendez's had Fourth Amendment rights, it put the Mendez's shack in the curtilage. And it put it in Hughes' curtilage. But there's three ways for somebody to show that their property is entitled to Fourth Amendment protection. It's a dwelling, it's a reasonable expectation of privacy, or it's in the curtilage. But it's your own curtilage. So when we look at the Mendez's, all that matters is that this was their home and this court found, as did the district court, that that was their separate dwelling. And I think when you... Well, I don't want to burn up a lot of time on this. ...that there was any question about whether, if this was a separate dwelling, they were entitled to a separate knock-and-announce. It certainly seems logical, but we didn't think the case law stood up to it. Perhaps we'll take another look. Go on. Are there other ways? Yes. So, as I said, there's four ways to address this. Negligence, unlawful entering, excessive force, knock-and-announce. All right. Now, when you were talking about the Espinoza opinion, you were talking about... Excessive force. Excessive force under the Constitution. Correct. And I thought that this opinion, at least, i.e., the Supreme Court opinion in Mendez and other things the Supreme Court has been doing recently, at least created major qualified immunity problems as to whether... I mean, certainly one can go back to some considerations that precede the actual shooting, like, for example, warning, which is what you said. Mm-hmm. But the warning assumes that they had time to give a warning. In other words, those cases proceed from the point at which the danger is known or knowable. The problem here is if, in order to get beyond... You really can't get to those questions without running into knock-and-announce. That's the problem, because until they saw the gun... Are you arguing that once they saw the gun, they should have said, put it down before they shot him? No. Why? Once they saw the gun, the issue... I mean, the guy had already been cast. At that point, they had... Yes, but most of the cases that you're talking about which have the warning issue. There are cases in which the police know that the individual has a weapon or is dangerous in some fashion, but doesn't say, you know, stop or drop the gun or I'm going to shoot if you keep doing that or anything like that. Is that what you're arguing? My point, Your Honor, is that the circuits are split on this issue. Some have... Pardon me? Precisely what issue? The issue of how far back can you go from the moment of shooting. There is an inter-circuit conflict on that issue. Now on to the question of warnings of the kind I'm talking about. Yes, yes. Such as what? Such as whether a police officer who creates the need for force can rely on the purported need for force. It's... The totality of the circumstances test is how it's addressed in other circuits. The other circuits have done exactly the same thing, but they've done it without calling it the provocation theory. I certainly thought we shouldn't have not used that word ever, but we did. Well, and I don't want to suggest that you should. I mean, the provocation doctrine had its issues. It wasn't clear whether it was a causation principle or whether it was a substantive principle. And what Justice Alito said was it doesn't make sense to leverage one constitutional violation into another. So the other circuits haven't done this. Instead, what they've done is they've said we will look at the totality of the circumstances we're not looking for predicate constitutional violations, we're looking for unreasonable conduct, which is the linchpin of the Fourth Amendment, giving rise to a purported need to use force. And if a police officer acts in a way that is unreasonable and then gives rise to a purported need to use force, the officer is liable. It's not about whether the officer shoots his gun or not.  And when you look at some of the examples that we see in American jurisprudence, a police officer jumps in front of a car when the car doesn't have time to turn away, says, oh, my goodness, this is a threat, shoots the driver. In Chicago, the Department of Justice has noted that there are these jump-out tactics where police officers without uniforms jump out of unmarked cars and accost suspects. Again, the police officer jumps out of an unmarked car, the person pulls a gun or a knife thinking that he's being robbed, and the police officer says, oh, in the moment, I thought there was a risk. And then you have this example of this case, which is where a police officer doesn't ensure that the individual within the shack knows that police is a police officer and then says, I'm going to shoot. The courts in this country that have adopted the totality of the circumstances test exactly, Your Honor, as you did in Espinoza, not the provocation section, Roman numeral three, but the excessive force section two. It was, no, it was not a warning question. What happened in Espinoza is that there was an individual in the attic and the police officers knew that there was only one entrance and they could have waited. So that's, I mean, that's our case. Instead, they went into the attic and they created the need for force. These officers went into the Mendez's shack no differently than the officers in Espinoza and they created the need for force. And when an officer unreasonably creates the need for force, the officer is liable. The Mendez's, as you pointed out, they were asleep on a futon in their house in the middle of the day, doing nothing wrong. They never did anything wrong. And these officers acted recklessly with gross negligence, with intentional disregard. They violated numerous constitutional provisions. And it is not justifiable under the law that they not pay the damages that they caused. And the district court found that those damages were $4 million and there isn't any argument in this case that those are not compensable and fair. Thank you, Mr. Phil. Thank you, Your Honors. Thank you for the additional time. You're welcome. Now, Ms. Cantrell. Thank you, Your Honor. With respect to the negligence cause of action, plaintiffs are arguing that they could have prevailed under Hays, which is not the issue before this court. The district court's finding in favor of the defendants on the negligence cause of action was not clearly erroneous, and respectfully, it must be affirmed. Indeed, the district court's specific... The district court in the end basically said, oh, it doesn't matter. You already won anyway. Your Honor, I would respectfully disagree with that. The court made those statements, but then said substantively, I do not believe that Hays impacts the defense finding on the negligence cause of action, and that ruling was not clearly erroneous. Under Hays, while pre-shooting conduct may be a factor in considering the totality of the circumstances and determining the reasonableness of the force, so is the immediate threat facing the officer. In this case, the district court specifically found that the deputies reasonably believed their lives were threatened and they faced an immediate threat. Importantly, there could be no greater threat to an officer than being faced with a gun pointed directly at them a few feet away. Respectfully, if this court should determine that the district court did not properly analyze Hays, which defendants strenuously dispute given the district court's findings that it did do so, the court could not just find in favor on the plaintiffs of a negligence cause of action based upon the district court's finding of the immediate threat facing the officers. To do so would be tantamount to imposing a provocation rule under California state law, which does not exist. In Hays, the Supreme Court said that to recover for injuries due to a use of force, the totality of the circumstances has to be analyzed and that pre-shooting conduct alone in isolation cannot be a basis for recovering of physical injuries due to the use of force. While it is a factor, so is the immediate threat facing the officers and that finding cannot just be disregarded. Rather, that finding is not clear error and respectfully, the negligence cause of action... Where is the district court opinion that you're relying on now? I'm sorry? Where is the language from the district court that you're currently relying on? The fact that the officers reasonably... The language that you're claiming that you're relying on. That the officers reasonably believed they were faced with an immediate threat. Well, there's a finding on the Hays issue after Hays came out. Oh, that's at SER 42. And the Supreme Court, in their statement of fact and conclusion of lot at ER 35, specifically found that the deputies' use of force at the moment of the shooting was reasonable. So we can't just impose a provocation rule where one does not exist and contradicts California Supreme Court law based on Hays. You cannot disregard the immediacy of the threat facing the officers as a factor. Also, with regard to any statement by the plaintiff about excessive force, that claim is waived. There's no law saying that an officer can be liable under the Fourth Amendment for creating a need for force. The officers would be entitled to qualified immunity from any new law. And also, they're not going to announce since they're titled to qualified immunity... Your Honor, respectfully, the plaintiff specifically stated on opposing defendant's petition for rehearing that they're not arguing that conduct prior to the use of force should be included in the totality of the circumstances. And I don't recall the plaintiff... The... The Espinoza had liability on the provocation doctrine, which was rejected. I'm not sure, and I don't not recall, briefing by the plaintiffs on Espinoza trying to impose a new standard for Fourth Amendment law in the Ninth Circuit, but the defendants submit that the majority of circuits only look to force at the moment it was applied, but if there was going to be a new standard, defendants would be entitled to qualified immunity, and the knock-and-announce violation could not be considered as part of the force analysis when a deputy is entitled to qualified immunity on that claim. It can't be used on a factor for a different constitutional violation. So those matters were waived. And just going back to... I see I'm over. I just will wrap up and say that, again, the plaintiff's counsel is discussing with regard to the failure to secure a warrant at the outset that the residents need time to know that officers are outside and that the residents should be ensured that the officers are present. Again, that is a risk solely associated with a knock-and-announce requirement, and continuing to assert that liability should be based in that regard is conflating the foreseeable risks of the two separate violations with the Supreme Court specifically directed that cannot be done on remand. Unless there's any more questions for me, I know I'm over my time. No. Hearing no questions, I'll just thank you. Thank you so much. I've been a rather poor presiding judge, letting both counsel go well over their time. But I haven't seen an approximate cause issue this challenging since I was in law school pondering Paul's graph. And I'm just glad that whereas then I had only Judge Cordozo, today I get the advantage of the excellent advocacy of Ms. Cantrell and Mr. Feldman. So thank you both for your fine arguments. This case shall be submitted. 75,000 articles about Paul's graph. This case shall be submitted, and if the panel feels it would like supplemental briefing, you'll hear from us by order. Okay, thank you.
judges: Gould, Berzon, Steeh